| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Lynda T. Bui, Trustee<br>3550 Vine Street, Suite 200B<br>Riverside, California 92507<br>Telephone: (949) 340-3400<br>Facsimile: (949) 340-3000<br>Email: Trustee.Bui@shulmanbastian.com<br><br>Chapter 7 Trustee<br><br>☐ *Debtor(s) appearing without an attorney*<br>☐ *Attorney for:* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - RIVERSIDE DIVISION**

| In re: | CASE NO.: **6:26-bk-11166-RB**<br>CHAPTER: **7** |
|---|---|
| **BUSHIDO CAPITAL, INC.,**<br><br>Debtor(s). | **NOTICE OF OPPORTUNITY TO REQUEST A HEARING ON MOTION**<br><br>**[LBR 9013-1(o)]**<br><br>[No hearing unless requested in writing] |

**TO THE U.S. TRUSTEE AND ALL PARTIES ENTITLED TO NOTICE, PLEASE TAKE NOTICE THAT:**

1. Movant(s) **Lynda T. Bui, Chapter 7 trustee**, filed a motion or application (Motion) entitled **Chapter 7 Trustee's Motion to Approve Settlement and Compromise Under Federal Rule of Bankruptcy Procedure 9019 Among the Bankruptcy Estate, Hecniel Camargan and the Debtor.**
2. Movant(s) is requesting that the court grant the Motion without a hearing as provided for in LBR 9013-1(o), unless a party in interest timely files and serves a written opposition to the Motion and requests a hearing.
3. The Motion is based upon the legal and factual grounds set forth in the Motion. (*Check appropriate box below*):

   ☒ The full Motion is attached to this notice; or

   ☐ The full Motion was filed with the court as docket entry # _____, and a detailed description of the relief sought is attached to this notice.

4. **DEADLINE FOR FILING AND SERVING OPPOSITION PAPERS AND REQUEST FOR A HEARING:** Pursuant to LBR 9013-1(o), any party who opposes the Motion may request a hearing on the Motion. The deadline to file and serve a written opposition and request for a hearing is 14 days after the date of service of this notice, plus 3 additional days if you were served by mail or pursuant to F.R.Civ.P. 5(b)(2)(D) or (F).

a. If you timely file and serve a written opposition and request for a hearing, movant will file and serve a notice of hearing at least 14 days in advance of the hearing. [LBR 9013-1(o)(4)]

b. If you fail to comply with this deadline:

(1) Movant will file a declaration to indicate: (1) the Motion was properly served, (2) the response period elapsed, and (3) no party filed and served a written opposition and request for a hearing within 14 days after the date of service of the notice [LBR 9013-1(o)(3)];

(2) Movant will lodge an order that the court may use to grant the Motion; and

(3) The court may treat your failure as a waiver of your right to oppose the Motion and may grant the Motion without further hearing and notice. [LBR 9013-1(h)]

Respectfully submitted,

Date: **08/04/2026**

**/s/ Lynda T. Bui**
Signature of Movant or attorney for Movant

**Lynda T. Bui**
Printed name of Movant or attorney for Movant

Lynda T. Bui, Trustee
3550 Vine Street, Suite 200B
Riverside, California 92507
Telephone: (949) 340-3400
Facsimile: (949) 340-3000
Email: Trustee.Bui@shulmanbastian.com

Chapter 7 Trustee

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA, RIVERSIDE DIVISION**

| | |
|---|---|
| In re<br><br>**BUSHIDO CAPITAL, INC.,**<br><br>Debtor. | Case No. 6:26-bk-11166-RB<br><br>Chapter 7<br><br>**CHAPTER 7 TRUSTEE'S MOTION TO APPROVE SETTLEMENT AND COMPROMISE UNDER FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 AMONG THE BANKRUPTCY ESTATE, HECNIEL CAMARGAN AND THE DEBTOR; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF LYNDA T. BUI IN SUPPORT THEREOF**<br><br>[No hearing required pursuant to Local Bankruptcy Rule 9013-1(o)] |

**TO THE HONORABLE MAGDALENA REYES BORDEAUX, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND OTHER PARTIES-IN-INTEREST:**

Lynda T. Bui ("Trustee"), solely in her capacity as the chapter 7 trustee for the bankruptcy estate ("Estate") of Bushido Capital, Inc. ("Debtor"), brings this *Motion to Approve Settlement and Compromise Under Federal Rule of Bankruptcy Procedure 9019 Among the Bankruptcy Estate, Hecniel Camargan and the Debtor* ("Motion"), and respectfully represents as follows:

///

## I. SUMMARY OF ARGUMENT

Through the Motion, the Trustee requests approval of a certain Settlement Agreement ("Settlement Agreement"), a true and correct copy of which is attached as **Exhibit 1** to the Declaration of Lynda T. Bui ("Bui Declaration").

The settlement resolves a defined group of potential Estate claims arising from transfers totaling $54,614.19. Those transactions consist of $15,540.00 transferred from the Debtor to Imperio Consulting Inc. ("Imperio"), a business affiliated with Mr. Camargan, and $39,074.19 in mortgage servicing payments made from the Debtor's account. In exchange for a limited release of claims arising from the foregoing transfers, Mr. Camargan will pay, or cause an affiliate to pay, $30,000.00 to the Estate (the "Settlement Amount"). The payment represents approximately 55% (fifty-five percent) of the presently identified maximum gross exposure, before accounting for disputed tracing issues, potential offsets, legal and factual defenses, collection risk, and the administrative expense and delay of litigation. The releases become effective only after the Settlement Amount has cleared the Estate's bank account and the Court has entered an order approving the settlement. The settlement does not release claims unrelated to the specifically identified transfers and mortgage payments, does not abandon or transfer any other Estate property, and does not constitute an admission of liability.

As set forth below, the Trustee believes that the interest of creditors and the Estate are best served if this Court approves the Settlement Agreement under the four factors set forth in *A & C Properties*. The settlement ensures a payment of $30,000.00 to the Estate and resolves all disputes between the Trustee, the Debtor and Mr. Camargan related to the specifically identified transfers and mortgage payments. The expense to litigate the disputes will exceed any potential benefit that might be achieved, while the Settlement Agreement results in the expedient resolution of the disputes. Therefore, based on *A & C Properties* and the Trustee's good business judgment, the Trustee respectfully requests the Court approve the Motion.

///

**Lynda T. Bui,**
**Chapter 7 Trustee**
3550 Vine Street
Suite 200B
Riverside, CA 92507

## II. RELEVANT FACTS

### A. Bankruptcy Case

The Debtor filed a voluntary Chapter 7 bankruptcy petition on February 19, 2026 (the "Petition Date"), in the United States Bankruptcy Court for the Central District of California, Riverside Division, commencing Case No. 6:26-bk-11166-RB. The Trustee is the duly appointed, qualified, and acting Chapter 7 trustee.

The Debtor's Schedules report no assets and approximately $202,417.00 in nonpriority unsecured debt. The claims bar date is October 2, 2026 ("Claims Deadline"). Currently, the Court's Claims Register reflects one general unsecured claim has been filed in the amount of $204.46.

Because the Claims Deadline has not yet passed, the final number and amount of allowed claims cannot yet be determined. Nevertheless, after anticipated administrative expenses, the Settlement Amount is expected to materially increase the funds available for distribution as compared to the case not being administered and to support a meaningful distribution to holders of allowed unsecured claims.

### B. The Trustee's Investigation and the Transfers

At the Trustee's request, the Debtor and Mr. Camargan produced bank account statements and related financial records. Mr. Camargan is the Debtor's principal and signed the Debtor's petition and schedules as its authorized representative. The Trustee contends that Mr. Camargan testified that the Debtor stopped operating in late 2023, when it sold its second investment home, and that its business activities should have ceased at that time. The records reviewed by the Trustee, however, reflect continuing account activity and numerous transactions through 2025.

The Trustee identified four transfers from the Debtor's account to Imperio, Mr. Camargan's new business, between August and October 2024. Those transfers total $15,540.00 (the "Imperio Transfers"). The Trustee also identified ten mortgage servicing payments made from the Debtor's account between May 2024 and November 2025 totaling $39,074.19 (the "Mortgage Payments" and together with the Imperio Transfers, the

**Lynda T. Bui,**
**Chapter 7 Trustee**
3550 Vine Street
Suite 200B
Riverside, CA 92507

"Transfers"). The Trustee calculated the presently identified gross exposure relating to the Tranfers at $54,614.19.

The Trustee contends that the Transfers may support claims against Mr. Camargan, Imperio, and potentially related parties under sections 542, 544, 548, and 550 of the Bankruptcy Code, applicable California voidable-transfer law, and related theories including turnover, unjust enrichment, accounting, alter ego, and other recovery theories limited to the Transfers (collectively, the "Settlement Claims").

The Debtor and Mr. Camargan deny liability. They contend that the accounting records are not clean, that a forensic accounting would show no net transfer to Imperio because Imperio deposited funds into the Debtor's account, and that personal funds were deposited into the Debtor's account before the Mortgage Payments were made. They, therefore, contend that any net transfer of the Debtor's funds in connection with the Transfers was minimal. No party has admitted the validity of any claim or defense.

**C. The Settlement and Its Terms**

Following investigation and negotiations, the Trustee, the Debtor, and Mr. Camargan entered into the Settlement Agreement. Imperio is not a signatory, but it is an express beneficiary of the limited release concerning the Settlement Claims. The principal terms are as follows:

1. Mr. Camargan will pay, or cause one or more affiliates to pay, $30,000.00 to the Estate. Mr. Camargan remains responsible for ensuring that the full Settlement Amount is paid and cleared.

2. The Settlement Amount is due concurrently with execution of the Settlement Agreement. The Trustee may hold the funds pending Court approval and is not required to provide any release unless the funds have cleared. The Trustee has received the full Settlement Amount.

3. If the Court declines to approve the Settlement by final, non-appealable order, the Trustee will return the Settlement Amount to the payor, without interest, and no release will take effect.

**Lynda T. Bui,**
**Chapter 7 Trustee**
3550 Vine Street
Suite 200B
Riverside, CA 92507

4. The Estate's release is limited to claims arising from or relating to the Transfers and Settlement Claims. Claims unrelated to those transactions are expressly preserved.

The foregoing constitutes a summary only. The complete terms are set forth in the Settlement Agreement, which shall govern and control in the event of any conflict or inconsistency with the summary.

## III. ARGUMENT

### A. Upon Court Approval, a Trustee May Compromise a Claim of the Estate.

The power of the Court to review and approve settlements is expressly recognized in Federal Rule of Bankruptcy Procedure, Rule 9019(a), which provides:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Thus, upon notice to the creditors, the United States Trustee, debtors, and indenture trustees, the Trustee may compromise a claim of the Estate. The approval of a compromise is a core proceeding under 28 U.S.C. §157(b)(2)(A) and (O). *In re Carla Leather, Inc.*, 50 B.R. 764, 775 (S.D.N.Y. 1985).

### B. The Court May Approve a Compromise Which is Fair and Equitable.

The purpose of a compromise agreement is to allow the parties to avoid the expenses and burdens associated with litigation. *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1380-81 (9th Cir. 1986), *cert. denied sub nom, Martin v. Robinson*, 479 U.S. 854 (1986). The bankruptcy court has great latitude in approving compromise agreements as long as it finds that the compromise is fair and equitable. *Id*. at 1382; *see also, Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1988). Generally, the benchmark in determining the propriety of a settlement is whether the settlement is in the best interests of the estate and its creditors. *In re Energy Cooperative, Inc.*, 886 F.2d 921, 927 (7th Cir. 1989). To be approved, the settlement need not represent the highest possible return to the estate, but merely must fall within the "range

**Lynda T. Bui,**
**Chapter 7 Trustee**
3550 Vine Street
Suite 200B
Riverside, CA 92507

of reasonableness." *In re Walsh Construction, Inc.*, 669 F.2d 1325, 1328 (9th Cir. 1982). In making this determination, the bankruptcy court need not conduct a trial or even a "mini trial" on the merits. *Id*.

In determining the fairness, reasonableness and adequacy of a proposed settlement, the Court must consider the following factors:

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending it; (d) the paramount interests of the creditors and a proper deference to their reasonable views in the premises.

*A & C Properties*, 784 F.2d at 1381; *Woodson*, 839 F.2d at 620. In other words, the Court must weigh certain factors in order to determine whether the compromise is in the best interests of the bankrupt estate. *A & C Properties*, 784 F.2d at 1382.

The Trustee believes that based on the four factors under *A&C Properties*, the proposed settlement is in the best interest of the Estate.

**1. <u>Probability of Success in Litigation.</u>**

The Estate has colorable claims concerning the Transfers, but recovery is uncertain. The Trustee would need to establish that the transferred funds were property of the Debtor, satisfy the elements of the applicable avoidance and recovery theories, and identify the proper transferee or beneficiary. Depending on the claim, the Trustee may also need to prove insolvency, intent, or lack of reasonably equivalent value.

The principal litigation risk concerns incomplete financial records and tracing issues arising from deposits and withdrawals through the same account. The Debtor and Mr. Camargan contend that Imperio deposited funds into the Debtor's account and that personal funds were deposited before the Mortgage Payments were made. Although the Trustee disputes those contentions, they create factual issues concerning the source, ownership, and net effect of the funds.

Resolving those issues would likely require reconstruction of the Debtor's account activity, review of supporting records, testimony from Mr. Camargan and potentially third

**Lynda T. Bui,**
**Chapter 7 Trustee**
3550 Vine Street
Suite 200B
Riverside, CA 92507

parties, and forensic accounting. The potential defendants may also assert value, offset, repayment, reimbursement, or similar defenses.

The settlement provides the Estate with $30,000.00. The net recovery may be less once the gross exposure of $54,614.19 is adjusted for tracing disputes, offsets, evidentiary uncertainty, litigation risk, or administrative expense. Because the gross exposure is not equivalent to a guaranteed net recovery, the settlement provides a substantial and immediate benefit to the Estate. This factor weighs strongly in favor of settlement.

**2. <u>Difficulties, if any, to be Encountered in the Matter of Collections.</u>**

Even a successful judgment would not necessarily produce a prompt or complete recovery. The Trustee has not conducted a comprehensive asset investigation concerning Mr. Camargan or Imperio and has not verified that either possesses sufficient unencumbered assets or available funds to satisfy a judgment approaching the full gross exposure. Further investigation would impose additional expense, and collection could require post-judgment discovery, levies, garnishments, turnover proceedings, lien enforcement, or other remedies.

The settlement eliminates that uncertainty by requiring the Settlement Amount to be delivered at execution and to clear before any release becomes effective. Thus, the Estate receives cleared funds rather than an uncollected judgment. This payment structure materially reduces collection risk and supports approval.

For these reasons, this factor weighs in favor of settling.

**3. <u>The Complexity of the Litigation Involved, Expense, Inconvenience and Delay Necessarily Attending It.</u>**

Litigation would be disproportionate to the amount in controversy. The Trustee would need to retain counsel, investigate and plead multiple federal and state-law theories, conduct written discovery, subpoena banking and mortgage records, take depositions, analyze potentially commingled funds, address tracing and ownership issues, and prepare for trial. A forensic accountant could be necessary to test the parties' competing net-transfer contentions. Even without assigning a specific dollar estimate, professional fees

Lynda T. Bui,
Chapter 7 Trustee
3550 Vine Street
Suite 200B
Riverside, CA 92507

and costs could consume a substantial portion of a maximum gross recovery of $54,614.19.

The litigation would also delay distributions and closing of the case. Discovery disputes, dispositive motions, trial preparation, trial, and a possible appeal could extend the matter for many months or longer. During that period, the Estate would bear administrative expense without assurance of a better net result. By contrast, the settlement produces a fixed $30,000.00 recovery without the cost of an adversary proceeding and permits the Trustee to focus on efficient administration.

Based on the foregoing, the Trustee has determined that the settlement reached is fair and reasonable. Based on this, the Trustee believes the settlement is the most expedient and cost-effective method for resolving the disputes. This factor also weighs in favor of settling.

**4. <u>The Paramount Interest of the Creditors and the Proper Deference to the Reasonable Views.</u>**

The settlement serves the paramount interests of creditors by converting uncertain, disputed, and potentially expensive claims into a substantial cash recovery. The Debtor scheduled approximately $202,417.00 in nonpriority unsecured claims. Although the Claims Deadline has not yet passed and the ultimate distribution percentage cannot yet be calculated, the Settlement Amount will materially increase the funds available for distribution and, after anticipated administrative expenses, is expected to support a meaningful distribution to holders of allowed unsecured claims.

Absent the settlement, creditors would bear the economic risk of litigation. A larger gross judgment might theoretically be available, but only after deduction of professional fees, costs, delay, collection expense, and the risk of an adverse outcome. The net $30,000.00 payment provides certainty now, while litigation could produce a smaller net recovery or no recovery at all. Creditors will receive notice of the Motion and an opportunity to object. Proper deference can therefore be given to any timely views they express.

///

**Lynda T. Bui,**
**Chapter 7 Trustee**
3550 Vine Street
Suite 200B
Riverside, CA 92507

Given that the Trustee's duties and responsibility is to maximize value for creditors, she believes that settlement with the Debtor and Mr. Camargan is in the best interest of the creditors and the Estate, and as such, this factor weighs strongly in favor of approval of the Motion.

## IV. APPROVING THE MOTION WITHOUT A HEARING IS PROPER

Local Bankruptcy Rule 9013-1(o)(1) provides as follows:

> (1) Matters That May Be Determined Upon Notice of Opportunity to Request Hearing. Except as to matters specifically noted in subsection (o)(2) below, and as otherwise ordered by the court, any matter that may be set for hearing in accordance with LBR 9013-1(d) may be determined upon notice of opportunity to request a hearing.

Further § 102(1)(B) of the Bankruptcy Code provides that "after notice and a hearing", or a similar phrase –

> (B) authorizes an act without an actual hearing if such notice is given properly and if –
>
> (i) such a hearing is not requested timely be a party in interest; or
>
> (ii) there is insufficient time for a hearing to be commenced before such act must be done, and the court authorizes such act.

*See* 11 U.S.C. § 102(1)(B).

The Trustee believes that the procedure under Local Bankruptcy Rule 9013-1(o)(1) is appropriate as she does not anticipate any opposition to the Motion. The notice procedure will save the Estate the fees and costs associated with conducting a hearing on approval of a matter that Trustee anticipates will not be opposed.

## V. CONCLUSION

Based on the reasons set forth above, the Trustee respectfully requests that the Court enter an order as follows:

1. Granting the Motion;
2. Approving the Settlement Agreement, a copy of which is attached as **Exhibit 1** to the Bui Declaration;

3. Authorizing the Trustee to execute any necessary documents to carry out the provisions as contemplated in the Settlement Agreement; and

4. For such other and further relief as the Court deems just and proper.

Dated: August 4, 2026

*/s/ Lynda T. Bui*
Lynda T. Bui
Chapter 7 trustee for the bankruptcy estate of *In re Bushido Capital, Inc.,* Case No. 6:26-bk-11166-RB

**Lynda T. Bui,**
**Chapter 7 Trustee**
3550 Vine Street
Suite 200B
Riverside, CA 92507

**<u>DECLARATION OF LYNDA T. BUI</u>**

I, Lynda T. Bui, declare and state as follows:

1. I am the Chapter 7 trustee for the bankruptcy estate of *In re Bushido Capital, Inc.,* Case No. 6:26-bk-11166-RB ("<u>Debtor</u>"). I have personal knowledge of the facts set forth herein and could, if called as a witness, competently testify to the facts.

2. I am familiar with the Debtor's bankruptcy case and make this Declaration in support of my *Motion to Approve Settlement and Compromise Under Federal Rule of Bankruptcy Procedure 9019 Among the Bankruptcy Estate, Hecniel Camargan and the Debtor* ("<u>Motion</u>"). I have read and I am aware of the contents of the Motion and the accompanying Memorandum of Points and Authorities. The facts stated in the Motion and the Points and Authorities are true to the best of my knowledge.

3. The Debtor filed its Chapter 7 petition on February 19, 2026. I was appointed as the Chapter 7 trustee. The Debtor scheduled approximately $202,417.00 in nonpriority unsecured claims. The claims bar date is October 2, 2026 ("<u>Claims Deadline</u>"). Currently, the Court's Claims Register reflects one general unsecured claim has been filed in the amount of $204.46.

4. At my request, the Debtor and Mr. Camargan produced bank statements and related financial records. Based on my review, I identified transfers totaling $15,540.00 from the Debtor's account to Imperio Consulting Inc. and mortgage servicing payments totaling $39,074.19 from the Debtor's account. I calculated the presently identified maximum gross exposure relating to those transactions at $54,614.19.

5. Based on my investigation, I believe the Estate may hold claims arising from those transactions under the Bankruptcy Code, applicable California law, and related recovery theories. The Debtor and Mr. Camargan deny liability and contend, among other things, that deposits by Imperio and deposits of personal funds would reduce or eliminate the net amount recoverable after a forensic accounting.

6. I have considered the strengths and weaknesses of the Estate's potential claims, the need for tracing and possible forensic accounting, the uncertain state of the

**Lynda T. Bui,**
**Chapter 7 Trustee**
3550 Vine Street
Suite 200B
Riverside, CA 92507

records, potential factual and legal defenses, the cost and delay of litigation, and the uncertainty of collection.

7. After negotiation, I entered into the Settlement Agreement with the Debtor and Mr. Camargan. Through the Motion, I request approval of the *Settlement Agreement* between myself as the Trustee for the Estate, the Debtor and Hecniel Camargan ("Mr. Camargan"), a true and correct copy of which is attached here as **Exhibit 1**.

8. In my business judgment, the $30,000.00 recovery is fair and reasonable because it represents approximately fifty-five percent (55%) of the presently identified maximum gross exposure *before* deduction for disputed tracing issues, offsets, defenses, litigation expenses, delay, and collection risk. I anticipate that the net may be less after the deductions.

9. Although the Claims Deadline has not passed and the exact distribution percentage cannot yet be determined, I expect the Settlement Amount to materially increase funds available for distribution if the case is not administered and, after anticipated administrative expenses, to support a meaningful distribution to holders of allowed unsecured claims.

I declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct.

EXECUTED on August 4, 2026, at Irvine, California.

*/s/ Lynda T. Bui*

Lynda T. Bui

# Exhibit 1

# Settlement Agreement

# SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into by and between Lynda T. Bui, solely in her capacity as Chapter 7 trustee ("Trustee") for the bankruptcy estate of Bushido Capital, Inc. ("Estate"), on the one hand, and Bushido Capital, Inc. ("Debtor") and Hecniel Camargan, individually ("Mr. Camargan"), on the other hand. The Trustee, Debtor and Mr. Camargan are collectively referred to as the "Parties." Imperio Consulting Inc. ("Imperio") is not a party to this Agreement and is not required to execute this Agreement, but is an express beneficiary of the limited release set forth herein only to the extent expressly provided below.

## I. RECITALS

This Agreement is made by the Parties with reference to the following facts:

1.1 The Debtor filed a Chapter 7 bankruptcy petition on February 19, 2026 ("Petition Date"), in the United States Bankruptcy Court, Central District of California, Case No. 6:26-bk-11166-RB.

1.2 Lynda T. Bui is the duly appointed, qualifying, and acting Chapter 7 trustee for the Debtor's Estate.

1.3 Hecniel Camargan is the Debtor's principal and signed the Debtor's petition and schedules as the authorized representative of the Debtor.

1.4 At the Trustee's request, the Debtor and Mr. Camargan provided certain bank account statements and related financial records (collectively, "Business Records").

1.5 The Trustee contends that Mr. Camargan testified that the Debtor stopped operating in late 2023, when it sold the second home, and that the Debtor's business activities should have ceased at that time. The Trustee further contends that the Business Records reflect numerous transactions and account activity well into 2025.

1.6 For settlement purposes, and without waiver, the Trustee has identified the following direct transfers from the Debtor's account to insider/affiliate business Imperio Consulting Inc., Mr. Camargan's new business:

(a) August 16, 2024: Online Transfer to Imperio Consulting Inc. - "Business Checking Refund" - $2,400.00;

(b) September 3, 2024: Online Transfer to Imperio Consulting Inc. - "Business Checking Cambridge Closing" - $10,300.00;

(c) September 4, 2024: Online Transfer to Imperio Consulting Inc. - Business Checking x5695 - $200.00; and

(d) October 25, 2024: Online Transfer to Imperio Consulting Inc. - "Business Checking Houston Closing" - $2,640.00.



EXHIBIT "1"

1.7 The subtotal of the transfers identified in Paragraph 1.6 is $15,540.00 (the "Imperio Transfers").

1.8 For settlement purposes, and without waiver, the Trustee has identified the following post-2023 mortgage servicing payments made from the Debtor's account, which the Trustee contends may reflect either continuing property ownership contrary to representations or diversion to service an insider/affiliate mortgage:

(a) May 2, 2024: Mortgage Serv CT Mtg Paymt - $3,882.82;

(b) June 4, 2024: Mortgage Serv CT Mtg Paymt - $3,882.82;

(c) July 3, 2024: Mortgage Serv CT Mtg Paymt - $3,882.82;

(d) August 1, 2024: Mortgage Serv CT Mtg Paymt - $3,882.82;

(e) September 4, 2024: Mortgage Serv CT Mtg Paymt - $3,882.82;

(f) October 2, 2024: Mortgage Serv CT Mtg Paymt - $3,882.82;

(g) November 5, 2024: Mortgage Serv CT Mtg Paymt - $3,882.82;

(h) December 3, 2024: Mortgage Serv CT Mtg Paymt - $3,882.82;

(i) January 3, 2025: Mortgage Serv CT Mtg Paymt - $3,882.82; and

(j) November 4, 2025: Mortgage Serv CT Mtg Paymt - $4,128.81.

1.9 The subtotal of the mortgage servicing payments identified in Paragraph 1.8 is $39,074.19 (the "Mortgage Payments").

1.10 The Imperio Transfers and Mortgage Payments are collectively referred to herein as the "Settlement Transactions." The Trustee has calculated the currently identified gross exposure relating to the Settlement Transactions as $54,614.19.

1.11 The Trustee contends that the Settlement Transactions may give rise to estate claims and causes of action against Mr. Camargan, Imperio, and/or related parties, including but not limited to avoidance, recovery, turnover, unjust enrichment, accounting, alter ego, substantive consolidation, and other related theories limited to the Settlement Transactions (collectively, the "Settlement Claims").

1.12 The Debtor and Mr. Camargan deny liability and dispute that the Trustee is entitled to recover on the Settlement Claims. They contend that, although their accounting records are not clean, a forensic accounting would show that the net transfer attributable to the Imperio Transfers is zero because Imperio deposited funds into the Debtor Account. They further contend that personal funds were deposited into the Debtor Account before the mortgage payments were made, such that any net transfer of the Debtor's funds or Estate property in connection with the mortgage payments was minimal.

1.13 The Parties acknowledge that disputes regarding these issues may be costly, could delay the closing of this case, and may not be beneficial to the creditors of the Estate due to the expense of investigating and resolving such disputes.



**EXHIBIT "1"**

1.14 The Parties desire to resolve only the Settlement Claims upon the terms and conditions set forth below. The Parties do not intend to resolve or release any claims outside the Settlement Transactions except as expressly provided in this Agreement.

## II. AGREEMENT

NOW THEREFORE, FOR GOOD AND VALUABLE CONSIDERATION, the adequacy of which is hereby acknowledged by each of the Parties, and in consideration of the mutual promises and covenants set forth below, the Parties agree as follows:

2.1 Effective Date of Agreement. This Agreement shall become effective and binding on the Parties upon the date of entry of an order of the Bankruptcy Court approving this Agreement ("Approval Order"). If the Bankruptcy Court does not enter the Approval Order, then this Agreement shall not become effective and shall be null and void, except for those provisions necessary to return the Settlement Amount as provided herein.

2.2 Payment to the Estate of the Settlement Amount. In exchange for the Trustee's agreement to waive and release the Settlement Claims against the Debtor, Mr. Camargan and Imperio, Mr. Camargan shall pay, or cause one or more of his affiliates to pay, the Estate $30,000.00 ("Settlement Amount"). Concurrently with the execution of this Agreement, Mr. Camargan shall deliver, or cause to be delivered, the Settlement Amount to the Trustee in immediately available funds in the form of either a money order or cashier's check payable to the order of "Lynda T. Bui, Ch. 7 Trustee," with reference to "Bushido Capital 26-11166" and delivered to the Trustee's office located at 100 Spectrum Center Drive, Suite 600, Irvine, CA 92618. Mr. Camargan remains responsible for causing the full Settlement Amount to be paid and cleared even if the Settlement Amount is funded by an affiliate. No person or entity funding any portion of the Settlement Amount shall become a released party or third-party beneficiary of this Agreement unless expressly identified as such in this Agreement.

2.3 Receipt and Clearance of Funds. The Trustee may hold the Settlement Amount pending Bankruptcy Court approval. The Trustee shall not be required to file the Compromise Motion or provide any release unless the Settlement Amount has been received and has cleared the Estate's bank account. If the Settlement Amount is not received concurrently with execution of this Agreement, is dishonored, is reversed, or otherwise does not clear, the Trustee may treat this Agreement as null and void, and no release shall take effect.

2.4 Return of Settlement Amount if Approval Is Not Obtained. If the Bankruptcy Court declines to approve this Agreement by final, non-appealable order, then the Trustee shall return the Settlement Amount to the payor, without interest, after allowing sufficient time to confirm that the funds have cleared and are not subject to reversal, chargeback, or other dispute. In that event, no release shall take effect and the Parties shall be restored to their respective pre-Agreement positions, subject to any applicable privileges, evidentiary rules, or defenses.

2.5 Motion for Approval of Compromise. Upon receipt of a fully executed copy of this Agreement and the Settlement Amount, the Trustee shall promptly file a motion with the Bankruptcy Court to obtain approval of this Agreement ("Compromise Motion") pursuant to Federal Rule of Bankruptcy Procedure 9019. This Agreement is contingent upon and expressly conditioned on the Bankruptcy Court's entry of the Approval Order. Unless and until approved by the Bankruptcy Court, this Agreement and the Compromise Motion shall not be



**EXHIBIT "1"**

construed as an admission of liability by any Party. The Debtor and Mr. Camargan are bound by this Agreement subject only to entry of the Approval Order and waive any right to object to approval by the Bankruptcy Court. The Parties will in good faith exercise all reasonable efforts required to obtain entry of the Approval Order, including executing and delivering any declarations or other items of support reasonably required in connection therewith.

2.6 Release Conditions. The releases set forth in Section IV shall become effective only after both of the following have occurred: (a) the Trustee has received the full Settlement Amount and the Settlement Amount has cleared the Estate's bank account; and (b) the Bankruptcy Court has entered the Approval Order. These conditions are collectively referred to as the "Release Conditions."

2.7 No Appeal of Approval Order. No Party to this Agreement shall file any appeal from the Bankruptcy Court's entry of the Approval Order approving this Agreement.

2.8 No Admission of Liability. This Agreement is entered into for compromise purposes only. The Parties acknowledge that this Agreement is the result of good faith settlement negotiations and shall not be construed as an admission of liability, wrongdoing, or the validity of any claim or defense by any Party or by Imperio, all of which are expressly denied.

## III. REPRESENTATION AND WARRANTIES

3.1 Each of the parties to this Agreement represents, warrants, and agrees as to themselves as follows:

(a) No party, nor any officer, agent, employee, representative, or attorney of or for any party, has made any statement or representation to any other party regarding any fact relied upon in entering into this Agreement, and each party does not rely upon any statement, representation, or promise of any other party, or of any officer, agent, employee, representative, or attorney for the other party, in executing this Agreement or in making the settlement provided for herein, except as expressly stated in this Agreement.

(b) Each of the Parties has made such investigation of facts pertaining to this settlement and this Agreement, and of all matters pertaining to this settlement and this Agreement, as that Party deems necessary.

(c) Each of the Parties has read this Agreement and understands its contents.

(d) The Parties acknowledge that they have either been represented in negotiations for and in the preparation of this Agreement by counsel of their choice, or that they have had an opportunity to retain counsel, and that they have read this Agreement, have had an opportunity to have it fully explained to them by such counsel, and are fully aware of the contents of this Agreement and of its legal effect.

(e) The Parties acknowledge that this Agreement is the result of good faith negotiations between the Parties and their respective counsel and is not to be

construed as an admission of liability on the part of any of the Parties, their agents, employees, officers, or representatives, by whom liability is expressly denied.

(f) The Parties are bound by this Agreement subject only to Bankruptcy Court approval and waive any right to object to approval by the Bankruptcy Court.

(g) Mr. Camargan represents and warrants that he has authority to execute this Agreement on behalf of the Debtor and that he is also executing this Agreement in his individual capacity.

(h) Mr. Camargan represents and warrants that payment of the Settlement Amount by him and/or one or more affiliates will not be made with property of the Estate unless expressly authorized by the Trustee and the Bankruptcy Court.

## IV. RELEASES

4.1 Trustee Release. Upon satisfaction of the Release Conditions, and subject to the carve-outs and limitations in this Agreement, the Trustee, solely in her capacity as Chapter 7 trustee for the Estate, and on behalf of the Estate only, releases and discharges the Debtor, Mr. Camargan and Imperio, and each of their respective officers, directors, employees, agents, representatives, attorneys, successors, and assigns, but only to the extent acting by, through, or on behalf of the Debtor, Mr. Camargan or Imperio (collectively, the "Released Parties"), from any and all claims, debts, damages, causes of action, and demands of any kind, whether known or unknown, suspected or unsuspected, latent or patent, arising out of or relating to the Settlement Claims and the Settlement Transactions. This release is limited to the Settlement Claims and the Settlement Transactions identified in Paragraphs 1.6 through 1.11 of this Agreement.

4.2 Release by Debtor and Mr. Camargan. Upon satisfaction of the Release Conditions, the Debtor and Mr. Camargan, individually and on behalf of their respective successors, assigns, agents, representatives, and attorneys, release and discharge the Trustee, solely in her capacity as Chapter 7 trustee, the Estate, and the Trustee's agents, representatives, attorneys, and retained professionals, from any and all claims, debts, damages, causes of action, and demands of any kind arising out of or relating to the Trustee's investigation, assertion, negotiation, and compromise of the Settlement Claims and Settlement Transactions, and the Trustee's administration of the Estate in connection with the same.

4.3 No Abandonment or Transfer of Estate Property. Except for the limited release of the Settlement Claims upon satisfaction of the Release Conditions, nothing in this Agreement shall constitute an abandonment, assignment, sale, or transfer of any property of the Estate, including any claim or cause of action not expressly released herein.

## V. MISCELLANEOUS

5.1 Jurisdiction of the Bankruptcy Court. Should any dispute arise regarding this Agreement, the United States Bankruptcy Court for the Central District of California, Riverside Division shall have exclusive jurisdiction to determine the same.



**EXHIBIT "1"**

5.2 Trustee Capacity. The Trustee is signing this Agreement solely in her capacity as Chapter 7 trustee of the Estate. Nothing contained herein shall in any way impute liability to the Trustee personally or as a member of any professional organization, or anyone acting on her behalf, including but not limited to the law firm of which she is associated, Shulman Bastian Friedman Bui & O'Dea LLP.

5.3 Further Documentation of Settlement. The Parties agree that they will execute any and all further and additional documents and take all further and additional steps that may be necessary or convenient to consummate the terms of this Agreement and accomplish its purposes.

5.4 Entire Agreement. This Agreement constitutes the entire understanding and agreement between the Parties concerning the subject matter hereof and supersedes all prior and contemporaneous agreements, understandings, terms, conditions, and representations, written or oral, made by any of the Parties or their agents concerning the matters covered by this Agreement.

5.5 Modification and/or Amendment. This Agreement may be amended and modified only by a written agreement signed by all of the Parties specifically acknowledging and approving the modification.

5.6 Successors and Assigns. This Agreement shall inure to the benefit of, and shall be binding upon, the Parties and their respective successors, assigns, heirs, agents, officers, directors, shareholders, representatives, and each of them, subject to the limitations on released parties and third-party beneficiaries set forth herein.

5.7 Controlling Law. This Agreement has been entered into in the State of California, and this Agreement, including any rights, remedies, or obligations provided for hereunder, shall be construed and enforced in accordance with the laws of the State of California to the extent not preempted by federal bankruptcy law.

5.8 Severability. If any provision of this Agreement is held, determined, or adjudicated to be invalid, unenforceable, or void for any reason, each such provision shall be severed from the remaining portions of this Agreement and shall not affect the validity and enforceability of such remaining provisions.

5.9 Effect of Headings. The titles and headings of this Agreement are for convenience and identification only and shall not be deemed to limit, amplify, or define the contents of the respective sections or paragraphs to which they pertain.

5.10 Gender. Whenever in this document the context may so require, the masculine gender shall be deemed to include the feminine and neuter genders, and vice versa.

5.11 Recitals. Each term of this Agreement is contractual and not merely a recital.

5.12 Counter-parts. This Agreement may be executed in one or more Counter-parts (multiple signatures) each of which shall be deemed an original, and all of which constitute one and the same instrument.

5.13 Attorneys' Fees. All Parties shall bear their own attorneys' fees and costs. In the event any claim, dispute, and/or litigation arises out of this Agreement, the prevailing



**EXHIBIT "1"**

party shall be entitled to recovery of its attorneys' fees and costs incurred in prosecuting or defending said claim, dispute, and/or litigation.

**BY SIGNING THIS AGREEMENT WHERE INDICATED BELOW I CERTIFY THAT I HAVE READ THE FOREGOING AGREEMENT IN ITS ENTIRETY, THAT I FULLY UNDERSTAND ALL THE WORDS, LANGUAGE, TERMS AND CONDITIONS CONTAINED HEREIN AND THAT I AGREE TO BE BOUND BY ALL THE TERMS AND CONDITIONS SET FORTH HEREIN.**

Dated: 8/4, 2026

Lynda T. Bui
Solely in her capacity as Chapter 7 trustee
for the bankruptcy estate of Bushido Capital, Inc.
6:26-bk-11166-RB

Dated: 07/10/26, 2026

Hecniel Camargan
Individually

Dated: 07/10/26, 2026

Hecniel Camargan
In his capacity as President/CEO of
the Debtor, Bushido Capital, Inc.

**APPROVED AS TO FORM:**

Dated: 7/10/26, 2026

**LAW OFFICE OF ANDREW H. GRIFFIN, III APC**

By: Andrew H. Griffin, III
Attorney for the Debtor, Bushido Capital, Inc.



**EXHIBIT "1"**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**100 Spectrum Center Drive, Suite 600, Irvine, CA 92618**

A true and correct copy of the foregoing document entitled (*specify*): **CHAPTER 7 TRUSTEE'S MOTION TO APPROVE SETTLEMENT AND COMPROMISE UNDER FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 AMONG THE BANKRUPTCY ESTATE, HECNIEL CAMARGAN AND THE DEBTOR; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF LYNDA T. BUI IN SUPPORT THEREOF [With Notice of Opportunity to Request a Hearing on the Motion]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **August 4, 2026**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Chapter 7 Trustee**: Lynda T. Bui (TR) trustee.bui@shulmanbastian.com, C115@ecfcbis.com; RPodorovsky@shulmanbastian.com
- **Attorney for Debtor**: Andrew H Griffin Griffinlaw@mac.com, griffinar82331@notify.bestcase.com
- **Interested Party**: United States Trustee (RS) ustpregion16.rs.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) **August 4, 2026**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) ________________, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| **August 4, 2026** | **Erlanna Lohayza** | ***/s/ Erlanna Lohayza*** |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

## U.S. MAIL SERVICE LIST

**DEBTOR**:
BUSHIDO CAPITAL, INC
4193 FLAT ROCK DR. STE 200
OFFICE #
RIVERSIDE, CA 92505-7113

**NEF - ATTORNEY FOR DEBTOR**:
ANDREW H GRIFFIN III
LAW OFFICE OF ANDREW H
GRIFFIN, III
275 E DOUGLAS AVE STE 112
EL CAJON, CA 92020-4547

**NEF - INTERESTED PARTY**:
UNITED STATES TRUSTEE (RS)
3801 UNIVERSITY AVENUE, SUITE
720
RIVERSIDE, CA 92501-3255

**CREDITOR LISTING**:
EMPLOYMENT DEVELOPMENT
DEPT.
BANKRUPTCY GROUP MIC 92E
P.O. BOX 826880
SACRAMENTO, CA 94280-0001

**CREDITOR LISTING**:
FRANCHISE TAX BOARD
BANKRUPTCY SECTION MS: A-340
P.O. BOX 2952
SACRAMENTO, CA 95812-2952

**CREDITOR LISTING**:
HECNIEL CAMARGAN
4193 FLAT ROCK DR BUILDING 200
OFFICE 284
RIVERSIDE, CA 92505-7113

**CREDITOR LISTING**:
HOME DEPOT CITIBANK
P.O. BOX 6497
SIOUX FALLS, SD 57117-6497

**CREDITOR LISTING**:
JP MORGAN CHASE
P.O. BOX 15548
WILMINGTON, DE 19886-5548

**CREDITOR LISTING**:
SBA - ECONOMIC INJURY DISASTER
P.O. BOX 3918
PORTLAND, OR 97208-3918

**CREDITOR LISTING**:
US BANK
PO BOX 5229
CINCINNATI, OH 45201-5229